**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA KORNECKI, | Civil Action No.: 2:13-cv-04401 (CCC) |
| Plaintiff, | **OPINION** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**CECCHI, District Judge.**

## I.   INTRODUCTION

Joshua Kornecki ("Plaintiff") appeals the final determination of the commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is affirmed.

## II.   BACKGROUND

### A.   Procedural History

Plaintiff applied for disability insurance benefits ("DIB") under Title II from the Social

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

Security Administration ("SSA") on July 27, 2009. (R. 131-139.) Plaintiff alleged disability beginning on April 1, 2009. (R. 133.) Plaintiff originally claimed that a heart attack, open heart surgery, post traumatic stress disorder ("PTSD"), anxiety, and depression limited his ability to work. (R. 151.) On appeal, Plaintiff added fatigue, dizziness, and back, neck, chest, and shoulder pain. (R. 179.) His claim was denied initially on October 21, 2009 (R. 73-77), and denied upon reconsideration on May 19, 2010. (R. 81-83.) The ALJ held a hearing in this matter on July 13, 2011. (R. 37.) In a written opinion dated September 20, 2011, the ALJ determined that Plaintiff was not disabled. (R. 17-36.) The Appeals Council denied review on April 5, 2013, rendering the ALJ's decision the final judgment of the commissioner. (R. 7-12.) Plaintiff timely filed this action.

### B.  Personal and Employment Background

Plaintiff was 33 years old at the onset of his alleged disability. (R. 133.) He received a Bachelor of Arts in Accounting at Brooklyn College in May of 1999 and a Juris Doctor at Hofstra School of Law in June of 2006. (R. 49, 191.) Plaintiff worked as an accountant with various firms. (R. 50-51, 191-192.) He alleged that he had his heart injury while he was working as a senior associate at PricewaterhouseCoopers LLP ("PWC"). (R. 51.) He then went on short-term disability at PWC, but was not able to receive long-term disability. (R. 52.)

The Vocational Expert at Plaintiff's hearing before the ALJ characterized Plaintiff's past fifteen years of work as an accountant as sedentary and highly skilled. (R. 64-65.)

### C.  Medical Background

Plaintiff alleges that his disability stems from his heart attack when he was 31. (R. 53, 62.) He claims that panic attacks, tightness in his chest, shortness of breath, fatigue, dizziness, and pain in his back, neck, chest, and shoulder limit his ability to work. (R. 151, 179.)  He also

2

claims that he is limited by PTSD, anxiety, and depression. (R. 151.) At the hearing before the ALJ, Plaintiff testified that if he has any type of pain or breathing issues, he thinks he is having a heart attack and it is difficult for him to focus. (R. 62.) He then testified that he lacks focus at times and could not be depended to be at work on time. (R. 53.) Plaintiff also claimed that he can drive, but he does not drive in busy areas because he does not trust himself to drive while on his pain medication. (R. 52.)

Plaintiff submitted two self-evaluated function reports. The first—dated in August 2009 indicates that he makes light meals, cleans, that he shops, meets friends, and plays with his children. (R. 161.) He tries to go out three times a week. (R. 163.) The second, dated three months later in December 2009, indicates almost none of these activities. (R. 342.)

Plaintiff's documentation of his medical issues begins when he was admitted to the Staten Island University Hospital ("SIUH") on December 11, 2007. (R. 214.) Plaintiff was diagnosed with a myocardial infarction. (R. 195, 214.) He was then sent to the emergency department for emergent cardiac catheterization. Id. The cardiac catherization revealed an anomalous left sinus of Valsalva on the right coronary artery.[2] Id. Plaintiff remained at SIUH until December 14, 2007, when he was transferred to NYU Medical Center. (R. 214-215.) There, Plaintiff underwent heart surgery on December 19, 2007 (R. 270, 442-444) and was discharged on December 24, 2007. (R. 552.)

On April 22, 2009, Dr. Eliyahu Kopstick evaluated an MRI of Plaintiff's thoracic spine. (R. 303.) Dr, Kopstick noted postoperative changes related to the prior heart surgery. Id. The

---

[2] This was explained by the medical expert at Plaintiff's hearing to mean that Plaintiff's right coronary artery originated in wrong side of Plaintiff's heart. (R. 41.) This can cause myocardial infarction, but can be repaired through operation. (R. 41-42.)

3

physician diagnosed a left paracentral disc herniation at T3-T4 without cord or nerve root compression or fracture. Id.

Plaintiff visited the Overlook Hospital emergency room for chest pain and anxiety on April 30, 2010. (R. 610, 612.) He claimed that he felt down all day and became very angry and stressed and started to hyperventilate while on the treadmill. (R. 610.) He was examined by Dr. Robert D. Slama. (R. 611.) Dr. Slama found atypical chest pain, with negative ck and troponin, hypokalemia unclear etiology, and stress/anxiety disorder in Plaintiff. Id. Dr. Slama recommended that Plaintiff may be a candidate for cardiac rehab for Plaintiff's anxiety disorder and also be in consideration for behavioral therapy. Id. Plaintiff was discharged on May 1, 2010. (R. 612.)

On November 18, 2010, Plaintiff had a treadmill stress test administered by Dr. Rama K. Reddy. (R. 606.) During the test, Dr. Reddy reported that Plaintiff underwent 11.1 minutes of Bruce Protocol and achieved a METS of 12.9. Id. Dr. Reddy's impression was that the stress test was negative for any significant ischemia and Plaintiff's ejection fraction and wall motion were normal. Id. The medical expert testified that Dr. Reddy's report indicated that Plaintiff was capable of light activity. (R. 42.)

Cardiologist Dr. Duccio Baldari filled out two assessments of Plaintiff's physical abilities. (R. 350-401.) On a report dated January 8, 2010, Dr. Baldari diagnosed Plaintiff with coronary artery disease and s/p coronary artery bypass grafting. (R. 350.) He then found that Plaintiff had no chest discomfort or cardiovascular symptoms. (R 352.) He also found Plaintiff capable of lifting only five pounds, standing or walking for less than two hours a day, sitting for less than six hours a day, and limited pushing/pulling as well as hearing, speaking, and traveling. (R. 353.) In his other report, Dr. Baldari filled out a cardiac impairment questionnaire dated

4

January 8, 2010. (R. 395.) He found that Plaintiff had symptoms of chest pain, palpitations, and angina equivalent pain. Id. Dr. Baldari then indicated that Plaintiff can only sit for one hour and stand/walk for one hour. (R. 398.) He also listed that Plaintiff can never lift, carry, push, pull, kneel, or bend in a work situation. (R 398-400.) He wrote that Plaintiff will be absent from work at least once a month and is incapable of even "low stress." (R. 399.)

On April 26, 2010, Dr. Rambhai C. Patel completed an internal medical examination of Plaintiff. (R. 478-484.) From the physical examination, Dr. Patel reported that Plaintiff had a regular sinus rhythm without murmur or gallop. (R. 480.) Dr. Patel then found that Plaintiff's chest x-ray showed no infiltration or pleural effusion. Id. He also found that there was no pneumothorax and that Plaintiff's heart size was normal. Id. Dr. Patel's impression was that Plaintiff's chest was normal. Id.

For Plaintiff's mental capacity, Dr. Stephen J. Wakschal provided several reports that the ALJ considered. In the record, Dr. Wakschal took progress notes from individual cognitive behavioral psychotherapy sessions with Plaintiff from December 29, 2008 until August 4, 2009. (R. 508-544.) These sessions were performed twice per month. (R. 402.) Dr. Wakschal has also filled out two psychiatric impairment questionnaires of Plaintiff with one dated December 29, 2008 until January 19, 2010 (R. 402) and the other dated May 25, 2011. (R. 621-628.) In addition, Dr. Wakschal has filled out two medical reports with one dated November 10, 2009 (R. 341) and the other dated August 31, 2010. (R. 507.)

Plaintiff was referred to Dr. Wakschal for psychotherapy sessions by Staten Island Heart physician Dr. Homayuni and has reported symptoms of PTSD. (R. 510.) From December 29, 2008 until August 4, 2009, Dr. Wakschal provided psychotherapy sessions twice per month to Plaintiff and wrote a report after each visit. (R. 402, 508-544.) The intake note written by Dr.

Wakschal reported that Plaintiff was experiencing anxiety, depression, flashbacks, irritability, impaired concentration, pessimistic thinking, and recurrent dreams of trauma. (R. 511.) Dr. Wakschal then noted that Plaintiff was found well oriented, alert, his affect was blunted, his mood was empty, his eye contact was poor, and his speech was halting. Id. Dr. Wakschal also reported that Plaintiff had normal recent memory, psycho-motor retardation, a preoccupation with his health, and poor frustration tolerance. Id. Plaintiff's treatment during these sessions focused on Plaintiff's marital problems, family life, and job searching. (R. 508-544.) In Dr. Wackschal's last mental status report of Plaintiff on July 21, 2009, he indicated that Plaintiff was well orientated, alert, had an anxious and depressed mood, had fair eye contact, had logical and coherent speech, had normal psycho-motor activity, had denied hallucinations, had an open and cooperative attitude, and was able to verbalize awareness of problems (but was unable to move from insight to behavioral change). (R. 542.) Dr. Wakschal also reported that Plaintiff was able to attend and maintain focus, but was volatile and unpredictable. Id.

In a medical report dated November 10, 2009, Dr. Wakschal noted that Plaintiff has obsessive compulsive disorder ("OCD") and developed PTSD secondary to his having undergone open heart surgery. (R. 341.) Dr. Wakschal reported that Plaintiff's symptoms of hyper-viligilence, irritability, phobic avoidance, and cognitive defects will remain intractable for the foreseeable future due to Plaintiff's enduring stressors. Id. Dr. Wakschal then reported that Plaintiff is unable to perform any type of work for a period of twelve months. Id.

On August, 31, 2010, Dr. Wakschal filed a report that stated Plaintiff was still participating in sessions and has been in his office six times since February 2010.[3] (R. 507.) Dr.

---

[3] There are no progress notes for these further sessions in the record.

Wakschal then noted that Plaintiff's symptoms prevent him from improving his mental status and that Plaintiff remains unable to work. Id.

Dr. Wakschal filled out a psychiatric impairment questionnaire at some point after January 19, 2010. (R. 402.) In the questionnaire, Dr. Wakschal diagnosed Plaintiff with PTSD and OCD. Id. Dr. Wakschal listed many symptoms such as anxiety, anhedonia, excessive rumination, and social isolation that demonstrated the diagnosis. (R. 404.) He noted that Plaintiff was markedly limited in performing activities within a schedule, working in coordination with others, completing a normal workweek without interruptions from psychologically based symptoms, interacting appropriately with the general public, asking simple questions, accepting instructions, getting along with co-workers without distracting them, responding appropriately to changes in the work setting, and setting realistic goals. (R. 405-407.) He felt that from this, Plaintiff was incapable of even low stress. (R. 408.)

Dr. Wakschal completed the same questionnaire at some point after May 25, 2011. (R. 621-628.) Here, Plaintiff was diagnosed with PTSD. (R. 621.) There were some clinical findings that demonstrated this diagnosis, but less than the earlier questionnaire.[4] (R. 622.) Dr. Wakschal found that Plaintiff was capable of low stress work, but likely to be absent from work more than three times a month as a result of the impairments. (R. 627-628.)

Dr. Joan F. Joynson, a non-examining state agency psychologist, completed a mental residual functional capacity assessment on October 14, 2009. (R. 337-340.) In this assessment, Plaintiff was found to have not significant or only minor limitations on cognition. (R. 337-338.)

---

[4] Poor memory, personality change, recurrent panic attacks, anhedonia, and illogical thinking were not found, unlike in the first questionnaire. (R. 622.)

7

Dr. Joynson then explained that Dr. Wakschal's progress notes and Plaintiff's own reports lead her to the conclusion that Plaintiff can follow complex directions, respond adequately to supervision, and adapt to workplace changes for simple work. (R. 339.)

Dr. Vasudev Makhija evaluated Plaintiff at the request of the Social Security Administration on April 13, 2010. (R. 473.) Dr. Makhija noted that Plaintiff claimed to have had lost interest in everything. (R. 473-474.) Dr. Makhija also reported that Plaintiff claims he is constantly afraid that he is going to have another heart attack, even though doctors told him that his corrective surgery made another attack unlikely. (R. 474.) Dr. Makhija observed that Plaintiff appeared to be withdrawn, his mood was anxious and depressed, but he had no thoughts of suicide. (R. 476.) Dr. Makhija then reported that Plaintiff was alert and oriented, but had difficulty with serial seven subtractions and could not spell the word "world" backwards after two attempts. Id. The doctor diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and cognitive disorder (not otherwise specified). Id.

Dr. Jane Shapiro, a non-examining state agency psychologist, completed a mental residual functional capacity assessment on May 18, 2010. (R. 500-503.) In this assessment, Plaintiff was only listed as markedly limited in the ability to interact appropriately with the general public. (R. 501.) Dr. Shapiro considered Dr. Wakschal's notes from December of 2008 until August of 2009, Dr. Wakschal's assessment from January 2010, and Dr. Makhija's mental status examination in order to fill out the assessment. (R. 502.) Dr. Shapiro noted that Plaintiff is able to manage only simple instructions, concentrate sufficiently to complete only simple tasks, respond appropriately to supervision (but not to the general public), and would do best in a setting with minimal need to coordinate with others. Id.

### III. LEGAL STANDARDS

8

### A.   Standard of Review

This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Courts are not "permitted to re-weigh the evidence or impose their own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F.App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B.   Determining Disability

Pursuant to the Social Security Act, to receive DIB, a claimant must satisfy the insured status requirements of 42 U.S.C. § 423(c). In order to be eligible for Benefits, a claimant must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

9

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382a(3)(D).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the claimant has a severe impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant

retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 262 n.2.

## IV. DISCUSSION

### A. The ALJ's RFC Determination Is Supported By Substantial Evidence

When determining Plaintiff's RFC the ALJ found that Plaintiff could "lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for 6 hours in an eight hour work day; sit for 6 hours in an eight hour work day; and perform unlimited pushing or pulling within the weight restriction given." (R. 24.) Moreover, the ALJ found that Plaintiff is able to perform jobs that require no use of ladders, ropes, or scaffolds; that require frequent use of ramps or stairs; that require occasional balancing, stooping, kneeling, crouching, and/or crawling; and that require no exposure to unprotected heights, hazards or dangerous machinery. Id. Furthermore, the ALJ found that "as to the mental demands of work . . . claimant is able to perform jobs: that are unskilled, and repetitive; that permit at least three breaks during the workday-each of at least 15 minutes duration; that are low stress . . .; that require no work in close proximity (closer than 3-5 feet) to others to avoid distraction; and that require occasional contact with supervisors, co-workers, and no contact with the general public." (R. 24-25.)

Plaintiff contends that the ALJ erred in its determination of Plaintiff's RFC by (1) not

11

following the treating physician rule and (2) not properly evaluating Plaintiff's credibility. (Pl. Br. 17-22, 22-26.) The court addresses each in turn.

### 1. The Treating Physician Rule

The so-called 'treating physician rule' states that the ALJ should give a treating physician's opinion regarding the severity of an alleged impairment "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(c)(2)(2012); see also Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001).

Plaintiff sets forth two arguments for why the ALJ failed to properly follow the treating physician rule. First, Plaintiff alleges that the ALJ erred by not giving treating psychologist Dr. Wakschal's opinions controlling weight. (Pl. Br. 21.) Second, Plaintiff argues that the ALJ erred by not evaluating Dr. Wakschal's opinion according to the factors set forth in 20 CFR §§ 404.1527(c)(2)-(6) and SSR 96-2p. (Pl. Br. 21-22.) The Court finds neither argument persuasive.

### a) The ALJ Properly Found that Dr. Wakschal's Opinion Is Not Controlling

Plaintiff argues that because the opinions from treating psychologist Dr. Wakschal are supported by appropriate findings and are uncontradicted by substantial evidence, then these opinions should have been controlling. (Pl. Br. 21.) Defendant disagrees, arguing that Dr. Wakschal's determination was contradicted by other substantial evidence in the administrative record. Defendant argues that the ALJ's reliance on this substantial evidence should not be disturbed by this Court. The Court agrees.

First, the ALJ found Dr. Wakschal's opinions are contradicted by the Plaintiff's reported activities of daily living. (R. 29.) It is proper for an ALJ to consider whether daily activities

contradict a treating physician's opinion. See 20 C.F.R. § 404.1529(c)(3); see also Russo v. Astrue, 421 F.App'x 184, 191 (3d Cir. 2011) (finding that the ALJ's decision to not apply controlling weight to the treating physician's opinion appropriate where the opinion was inconsistent with plaintiff's reported daily activities). Here, the ALJ pointed out that Dr. Wakschal reported Plaintiff had anxiety, anhedonia, excessive rumination, and social isolation. (R. 27.) However, Plaintiff reported to Dr. Wakschal that his daily activities included driving long distances, attending social functions, and visiting relatives. (R. 29; 541) Further, the ALJ correctly notes that Plaintiff's first function report indicates relatively normal day to day activities, including interacting with friends online, shopping, light cleaning and cooking, and attending synagogue services twice a week. (R. 161-176). Thus, Dr. Wakschal's opinion is inconsistent with the reported daily activities of Plaintiff.

The ALJ's opinion also contrasts Dr. Wakschal's opinion with the opinion of state agency psychologist, Dr. Shapiro. (R. 29.) The opinion notes that while Dr. Shapiro's conclusions are well supported, Dr. Wakschal's "are not supported by the record." (Id.) When examining the record, an ALJ is not foreclosed from relying upon a non-examining physician's opinion. Moody v. Barnhart, 114 F. App'x 495, 501 (3d. Cir 2004) (citing 20 C.F.R. § 404.1527(d)). "The Regulations allow the ALJ to rely upon medical opinions and specifically provide that 'all evidence from nonexamining sources [is] opinion evidence.'" Id. (quoting 20 C.F.R. § 404.1527(f) (reclassified as 20 C.F.R. § 404.1527(e)). When the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)). If there are conflicting opinions of psychiatrists dealing with a plaintiff's mental

13

impairment, the non-treating psychiatrist's opinion may be used as substantial evidence if it conflicts the treating psychiatrist's opinion. Brown v. Astrue, 649 F.3d 193, 196-97 (3d Cir. 2011) ("Although there was record evidence from a treating psychiatrist suggesting a contrary conclusion, the ALJ is entitled to weigh all evidence in making its finding").

Here, the ALJ reported that Dr. Shapiro's conclusions are consistent with the residual functional capacity while Dr. Wakschal's opinions are not. (R. 29.) Dr. Shapiro noted that Plaintiff is able to manage only simple instructions, concentrate sufficiently to complete only simple tasks, respond appropriately to supervision (but not to the general public), and would do best in a setting with minimal need to coordinate with others. (R. 502.)

Plaintiff notes that Dr. Shapiro's evaluation of the record excluded a medical report and second questionnaire submitted by Dr. Wakschal. (Pl. Br. 17). Plaintiff argues that this renders Dr. Shapiro's opinion unreliable. (Id.) However, as noted by Plaintiff, the medical report and second questionnaire "were not significantly changed from those detailed in the earlier questionnaire." (Pl. Br. 8). This did not add significant information which would render Dr. Shapiro's opinion unreliable. The relevant differences are that the second questionnaire had less clinical findings for the diagnosis, indicated that the Plaintiff was capable of low stress (as opposed to the first questionnaire which stated Plaintiff was "incapable of even low stress"), and specified that Plaintiff was likely to be absent from work more than three times a month as a result of the impairments. (R. 402-409, 621-628.) Thus, Dr. Shapiro's opinion was based on a sufficient prior review of the records and the ALJ was correct in considering and crediting the findings of Dr. Shapiro. (R. 29.)

Accordingly, the record supports the ALJ's holding that Dr. Wakschal's opinions were not controlling pursuant to 20 C.F.R. § 404.1527.

### b) The ALJ Properly Considered the 20 C.F.R. § 404.1527 Factors In Weighing Dr. Wakschal's Opinion

If the treating physician's opinion is not given controlling weight, the ALJ applies the factors listed in 20 C.F.R. § 404.1527(c)(1)-(6) to determine the appropriate weight to give a medical opinion.[5] The court finds that the ALJ properly considered these factors in weighing Dr. Wakschal's opinion.

The ALJ must consider all of the evidence and may weigh the credibility of that evidence, but must give some indication of the evidence that was rejected and the reasoning for rejecting it. See Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000); see also Fargnoli, 247 F.3d at 42-44 (remanding the ALJ's decision for failure to explain the weight given to evidence from claimant's treating physicians). In regards to weighing a non-treating source over a treating source, an ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, or may accord it more or less weight depending on the extent to which supporting explanations are provided. Santiago v. Barnhart, 367 F.Supp.2d 728, 736 (E.D. Pa. 2005) (quoting Plummer, 186 F.3d at 429).

The ALJ's decision to not accord Dr. Wakschal's opinions controlling weight was supported. As set forth in the preceding section, the ALJ's found that Dr. Wakschal's opinions were inconsistent with the record. The ALJ specifically noted that Dr. Wakschal's opinions were inconsistent with the Plaintiff's reported activities of daily living, visit to the emergency room in

---

[5] These factors include: (1) examining relationship; (2)(i) length of treatment relationship and frequency of examination; (2)(ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency of the record; (5) specialization of the physician; and (6) other factors, such as any other information which would tend to support or contradict the medical opinion. See 20 C.F.R. § 404.1527(d)(1)-(6).

2010, and Dr. Shapiro's opinion. (R. 29.) Thus, ALJ followed the standard set forth in <u>Burnett</u> and properly supported her decision to give Dr. Wakschal's opinions little weight. Accordingly, the ALJ properly weighed the factors, and her decision is supported by substantial evidence.

### 2. The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff's final contention is that the ALJ failed to properly credit Plaintiff's testimony. (Pl. Br. 22-26.) Plaintiff alleges that the ALJ did not consider the factors enumerated in SSR 96-7p prior to making the RFC determination. (Pl. Br. 25-26.) Plaintiff claims that "[t]he regulations at 20 C.F.R. § 404.1529(c)(4) instruct the ALJ to evaluate the consistency of a claimant's statements not against the adjudicator's own RFC finding, as the ALJ did here, but rather instruct the ALJ to compare the claimant's testimony against the evidence of the record." (Pl. Br. 20.)

In evaluating a claimant's testimony regarding symptoms and pain, an ALJ must first determine whether there is a medically determinable impairment that could reasonably be expected to produce the alleged pain or symptoms. 20 C.F.R. § 404.1529. When impairment is found, a claimant's statements about their pain and symptoms do not alone establish disability. 20 C.F.R. § 404.1529(a); see <u>Bembery v. Barnhart</u>, 142 F.App'x 588, 591 (3d Cir. 2005). The ALJ must evaluate a claimant's subjective statements in relation to the objective evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4); <u>Bailey v. Comm'r of Soc. Sec.</u>, 354 F.App'x 613, 618 (3d Cir. 2009) ("[A]n individual's statements about symptoms . . . must be corroborated by medical evidence."). When performing this evaluation, in addition to the objective medical evidence, the ALJ must assess (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) medications, treatments, or other measures the claimant takes to alleviate the symptoms; and (5) any other relevant factors. SSR 96-7p. In making this

determination, the ALJ is given great discretion and judicial deference. See Bembery, 142 F.App'x at 591. The court finds the ALJ properly conducted this analysis.

Here, the ALJ first found that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms. (R. 26.) The ALJ then found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual capacity assessment." Id.

In the ALJ's examination of the evidence, she found that Plaintiff's reported activity is inconsistent with his follow-up visits with Dr. Wakschal. (R. 29.) The ALJ did not find Plaintiff's inability to perform concentration exercises with Dr. Makhija indicative of Plaintiff's functioning. (R. 29.) The ALJ supported this finding by reporting that Plaintiff was listed to have intact memory and concentration by Dr. Wakschal's mental status examination[6] (R. 542), Plaintiff reported a far greater activity level at the hearing, and that Plaintiff was reporting some alleviation of his symptoms due to the medicine he was taking. (R. 29, 53.) The ALJ also noted that plaintiff visited the emergency room for anxiety, but there was no evidence of anxiety by the time Plaintiff was examined. (R. 29, 610.) Additionally, the ALJ examined Dr. Baldari's assessments (R. 350-401), Plaintiff's back MRI (R. 303), Plaintiff's tread mill stress test (R. 606), and the internal medical examination performed by Dr. Patel (R. 478-484.)  After examining the record evidence, the ALJ determined that "the claimant would certainly have some degree of limitations in work related social functioning and maintaining persistence and pace; as a result, I have limited the amount of time he could spend interacting with others, and

---

[6] The ALJ stated the mental status examination listing Plaintiff with intact memory and concentration was in August of 2009, but—in fact—the examination occurred in July of 2009. (R. 29, 542.)

also allowed for concentration deficits in his residual functional capacity assessment." (R. 29.) Thus, the ALJ compared the claimant's testimony against the evidence of the record and comported with the applicable standards in determining the credibility of Plaintiff's testimony as to his symptoms and pain.

## V. CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed. An appropriate order accompanies this Opinion.

DATED: September 23, 2014

**CLAIRE C. CECCHI, U.S.D.J.**